NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

CHRISTINE LYNN GERARDI, *Petitioner/Appellant/Cross-Appellee,*

*v.*

KIRK DAVID SIDDENS, *Respondent/Appellee/Cross-Appellant.*

No. 1 CA-CV 25-0523 FC

FILED 08-07-2026

Appeal from the Superior Court in Maricopa County
No. FN2022-051338
The Honorable Paula A. Williams, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

APPEARANCES

Cantor Law Group PLLC, Phoenix
By Travis J. Owen
*Counsel for Petitioner/Appellant/Cross-Appellee*

Genesis Legal Group, Gilbert
By Kevin Jensen
*Counsel for Respondent/Appellee/Cross-Appellant*

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Vice Chief Judge David D. Weinzweig joined.

**B R O W N**, Judge:

¶1        Christine Gerardi ("Wife") appeals the superior court's dissolution decree ending her marriage with Kirk Siddens ("Husband"), who cross-appeals.  Both parties challenge various aspects of the court's division of property.  We affirm part of the decree, but we vacate other portions and remand for further proceedings.

## BACKGROUND

¶2        The parties married in 2012.  Husband acquired a business ("Business") before the marriage and continued to operate it during the marriage until he sold it in 2021.  Wife works for the military as a civilian.  After Wife petitioned for dissolution in 2022, the parties proceeded to trial where the disputed issues were allocation of their dogs, cars, bank accounts, Husband's two retirement accounts, and a brokerage account, as well as the classification of the Business profits as separate or community property.[1]

¶3        At trial, the superior court heard testimony from the parties and their expert witnesses.  In dissolving the marriage, the court awarded two cars (a BMW and the Ford Shelby) to Wife and one car (a second BMW) to Husband along with an equalization payment.  Addressing retirement funds, the court referenced Wife's federal pension and her Thrift Savings Account, as well as Husband's retirement funds and brokerage account totaling $997,527, and awarded each party "his or her interest in any retirement benefits, pension plans, or deferred compensation."  The court further ordered the parties to arrange for preparation of necessary qualified domestic relations orders ("QDRO") by an expert, including determination

---

[1]        In his pretrial statement, Husband referred to the two retirement accounts and the brokerage account as his "retirement account."  As explained in ¶¶ 14–16, *infra*, inclusion of the brokerage account led to confusion in the decree.

of the community portion of Husband's retirement accounts. The court also concluded that contributions to Husband's retirement accounts relating to the Business were community property and thus subject to division through a QDRO. The court awarded both dogs to Husband and declined to award attorneys' fees and costs to either party.

¶4        Each party moved to amend the decree under Arizona Rule of Family Law Procedure ("ARFLP") 83. Wife asserted that Husband waived his claim for the parties' dogs by asking the court in his pretrial statement to award them to her. Wife also argued the court (1) should have clarified that Husband had three separate accounts instead of finding "there was one IRA account valued at $997,527," and (2) needed to further analyze the community interest in those accounts. The court denied both arguments.

¶5        Husband argued the court erred by awarding the Ford Shelby to Wife, given both parties' request that it be awarded to Husband, and by refusing to admit Wife's discovery responses, which included pertinent information about the cars. He also asserted the court erred in finding that contributions to his retirement accounts compensated the marital community. The court vacated the award of the Ford Shelby to Wife and awarded it to Husband but denied his request to change the findings on his retirement accounts. A timely appeal and cross-appeal followed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶6        Under A.R.S. § 25-318(A), the superior court "shall assign each spouse's sole and separate property to such spouse" and shall divide the community property "equitably." The court has broad discretion to apportion community property "to achieve an equitable division, and we will not disturb its allocation absent an abuse of discretion." *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). Generally, "an equal distribution of joint property will be the most equitable." *Toth v. Toth*, 190 Ariz. 218, 221 (1997) (noting that determining whether a property division is equitable is "dependent upon the facts of particular cases"). "[W]e consider the evidence in the light most favorable to upholding the superior court's ruling and will sustain the ruling if it is reasonably supported by the evidence." *Boncoskey*, 216 Ariz. at 451, ¶ 13.

### A. Ownership of the Dogs

**¶7** Noting that the pretrial statement "controls the subsequent course of the litigation," *Leathers v. Leathers*, 216 Ariz. 374, 378, ¶ 19 (App. 2007) (quotation omitted), Wife argues that because Husband asked the court to award the dogs to Wife, the court erred in awarding both dogs to Husband. Wife cites *Robertson v. Petz*, 260 Ariz. 327 (App. 2025), to support her argument about pretrial statements, but that case supports the court's action here. Both Husband and Wife placed the issue of ownership of the dogs before the court in their pretrial statements. *See id.* at 334, ¶ 19 (noting the pretrial statement placed an issue before the court). Wife cites no authority suggesting a court is precluded from dividing property in the manner that best achieves an equitable division.

**¶8** Wife consistently stated, both in her pretrial statement and her trial testimony, that she could only keep one dog. Husband testified the two dogs were from the same litter, they should not be separated, and he would keep both dogs if it was the only way to keep them together. Under these circumstances, Wife has not shown the court abused its discretion. *See Boncoskey*, 216 Ariz. at 451, ¶ 13; *see also In re Marriage of Flower*, 223 Ariz. 531, 535, ¶ 14 (App. 2010) (recognizing the trial court has broad discretion to allocate property and "may consider other factors that bear on the equities of a particular case").

### B. Car Valuations

**¶9** In the decree, the superior court found the only credible evidence about car values were Wife's Carfax reports. The court also found there was "no credible evidence" on whether the cars "had positive equity at the time of service." Based on the Carfax valuations, the court (1) awarded Wife one of the BMWs and the Ford Shelby, and (2) awarded Husband the other BMW plus an equalization payment of $17,025. Later, the court granted Husband's ARFLP 83 motion, vacating the award of the Shelby to Wife and awarding it to Husband. Yet the court did not address the equalization payment originally awarded to Husband. Wife argues that awarding the Shelby to Husband without making additional findings or corrections to the equalization payment was error. We agree; the court must reconsider this issue on remand.

**¶10** In his cross-appeal, Husband contests the Carfax valuations the court relied on at trial. Husband sought to introduce Wife's sworn discovery responses as substantive evidence of the car valuations and the lien on his BMW. Wife objected, asserting her responses were

"voluminous" and Husband had not laid proper foundation. The court sustained the objection, explaining that Husband could testify to his recollection of Wife's responses, but because "there's a ton of other stuff in there," the court refused to admit the responses into evidence.

**¶11**        "We review evidentiary rulings . . . for an abuse of discretion and generally affirm absent a clear abuse or legal error and resulting prejudice." *Davis v. Davis*, 246 Ariz. 63, 65, ¶ 6 (App. 2018) (citation modified). But "we review the application and interpretation of court rules *de novo*." *Id.*

**¶12**        In civil proceedings, a party's own statements are admissible when offered by an opposing party under Arizona Rule of Evidence ("Rule") 801(d)(2). *See Barrett v. Melton*, 112 Ariz. 605, 607 (1976) ("When offered by the opposing party, interrogatories fall within the admissions of a party exception to the hearsay rule and are admissible."). But under ARFLP 2, the hearsay and authentication rules do not apply in family law proceedings unless a party expressly requests strict compliance with the Rules. Neither party did so here.

**¶13**        Husband's ARFLP 83 motion explained that he planned to use Wife's sworn interrogatory responses to establish the lien on his BMW, as well as the car values. He admits he "did not have alternative evidence"; however, we recognize his reliance on the presumed admissibility of Wife's interrogatory responses. Because the court explained it received "no credible evidence" of liens on the cars, the court's final equalization of the car values does not reflect the circumstances of the parties' property. Thus, the court erred by failing to consider Wife's interrogatory responses, which were admissible as relevant evidence under ARFLP 2(b)(2) and Rule 402. On remand, the court must reconsider the value of each car and the related liens, as well as any necessary equalization payment.

## C.    QDROs

**¶14**        The superior court found that Husband's retirement accounts totaled $997,527 and that the community portion of that amount should be determined through preparation of a QDRO. Wife argues the court's failure to distinguish between the accounts, or adequately describe them, presents a "fundamentally flawed" order that would prevent a QDRO-preparer from completing their task of identifying the community's deposits. Without explanation, the court denied Wife's ARFLP 83 motion to clarify the portion of the decree addressing QDROs.

**¶15** Under ARFLP 72.1, "[i]f a court order requires retirement benefits . . . to be divided, the court may appoint [a professional] . . . to recommend a division or to implement the division that the court has ordered." ARFLP 72.1(a). "The court's order of appointment must identify the specific assets to be divided." ARFLP 72.1(b); *see also* A.R.S. § 25-318(F) ("The decree or judgment shall specifically describe . . . any real property . . . [and] any other property affected."); *Matter of Howie v. Howie*, 1 CA-CV 23-0587 FC, 2025 WL 1711285, at *11, ¶ 54 (Ariz. App. June 19, 2025) (mem. decision) ("An order allocating marital property must identify the property with sufficient specificity to determine if the order has been complied with and, if not, to permit its enforcement.").

**¶16** The portion of the decree addressing QDROs is defective for two reasons. First, a brokerage account must be divided by decree, not by a QDRO. *See Chang v. Sui*, 234 Ariz. 442, 448, ¶ 23 (App. 2014) (affirming the superior court's adoption of an arbitrator's conclusion that assets in a series of brokerage accounts were community property and divisible by the dissolution decree). Second, although the court's order states that the parties shall arrange for preparing "any necessary" QDROs, given the authorities noted above, *supra* ¶ 15, we agree with Wife that greater specificity is necessary. With the decree's consolidation of Husband's retirement accounts, the potential for confusion by the appointed QDRO professional is probable. The court must provide the required specificity on remand.

### D. Husband's Retirement Accounts

**¶17** Husband argues the superior court erred by reclassifying profits from the Business as community property based solely on the fact the funds were paid into his retirement accounts. He contends the court's classification of his retirement contributions ($203,825) as community property, on top of its awards to Wife for under-compensation and the appreciation of the Business, is unjustified "stacking."

**¶18** "We review the court's property characterization as separate or community de novo." *Larrea v. Chand*, 261 Ariz. 93, 98, ¶ 18 (App. 2025). Arizona courts recognize a "strong presumption" that all earnings received during a marriage are community funds. *See Barr v. Petzhold*, 77 Ariz. 399, 409 (1954). The party seeking to rebut the community-property presumption has the burden to identify and trace the separate funds with clear and satisfactory evidence. *Larrea*, 261 Ariz. at 99, ¶ 21.

**¶19**         When addressing "separate property profits and increase in value, Arizona courts have looked to the nature, or source, of the profit from or increase of the separate property business." *Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 252, ¶ 12 (App. 2008). "[I]f the profits and/or increase result from the 'inherent qualities of the business,' the profits and increase are separate property; if the profits and/or increase result from the 'individual toil and application of the spouse,' they are community property." *Id.* (citation omitted). The profits, or increase, are apportioned to the community according to the amount attributable to compensating the community for the "labor, skill and industry of one or both spouses." *Cockrill v. Cockrill*, 124 Ariz. 50, 54 (1979) (citation modified). Once the court has determined the amount of reasonable compensation due to the community, the superior court must apportion any remaining profits "between the community and [the owner spouse's] separate-property estate." *Kim v. Pak*, 258 Ariz. 594, 599, ¶ 18 (App. 2024).

**¶20**         Consistent with this authority, the superior court explained that "contributions to retirement plans are typically employer contributions that are part of an employee's compensation package or contributions from the employee from his wages." The court then concluded that Husband did not present "clear, credible evidence of his compensation package," and thus had "not met his burden of proof that the retirement contributions were sole and separate property."

**¶21**         Husband notes that the court contemplated Husband's labor, determined the community was under-compensated for that labor and thus awarded $23,107 to the community. And because the court also awarded Wife $30,822.50 as her portion of the community's share of the Business appreciation when it was sold, Husband asserts the court fully accounted for her share that resulted from his efforts under *Rueschenberg*. He therefore contends that under *Kim*, the court erred by apportioning the contributions to his retirement account as compensation rather than excess profits from the Business. *See Kim*, 258 Ariz. at 599, ¶¶ 18–19.

**¶22**         We are not persuaded by Husband's reliance on *Kim*, which establishes that the superior court is "required to determine the separate and community portions" of a separate business' profits "and allocate them to the respective estates accordingly." *Id.* at ¶ 18. Here, the superior court did exactly that: it determined a portion of the retirement contributions was compensation from the Business and apportioned that share to the community.

¶23 We recognize that the court accounted for the marital community's interest when it awarded Wife funds to account for under-compensation and appreciation of the Business, but that does not mean the court improperly treated Husband's contributions to his retirement accounts as part of his compensation. The court found that Husband failed to provide credible evidence of his compensation package, and Wife's expert's report included Husband's contributions to one of the retirement accounts as community property.

¶24 Moreover, Husband's expert noted that his analysis "reduced the actual compensation paid to [Husband] for retirement contributions to" one of Husband's retirement accounts. That statement implies that the Business made contributions to Husband's retirement accounts as part of his compensation and is consistent with the presumption applied by the superior court that employer contributions to retirement accounts form a portion of an employee's compensation, *supra* ¶ 21. Because Husband failed to present any evidence showing his contributions to his retirement accounts resulted from the inherent qualities of the Business, the court did not err in classifying $203,825 of the retirement contributions as community property. *See Boncoskey*, 216 Ariz. at 451, ¶ 13 (explaining that appellate courts view the evidence in the light most favorable to sustaining the superior court's ruling); *see also Kerr v. Killian*, 207 Ariz. 181, 182, ¶ 4 (2004) (explaining that the employer's contribution to an employee's retirement account "is plainly a benefit conferred by the employer as a result of the employee's labor").

### E. Attorneys' Fees and Costs

¶25 Wife requests an award of attorneys' fees under ARCAP 21. We deny her request because merely citing the rule does not provide a substantive basis for awarding fees. *See* ARCAP 21(a)(2) ("A claim for fees under [ARCAP 21] must specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees."); *see also Zambrano v. M & RC II LLC*, 254 Ariz. 53, 66, ¶ 49 (2022) (denying request for attorneys' fees incurred on appeal because the party seeking fees "failed to state the basis for the request as required by our rules of procedure"). Because each party has achieved partial success on appeal, we decline to award taxable costs.

### CONCLUSION

¶26 We vacate the superior court's award of an equalization payment of $17,025 to Husband as part of its allocation of the cars and

remand to allow the court to reconsider its findings after considering all admissible evidence.  We remand the portion of the dissolution decree directing preparation of QDROs so the court may specifically describe each relevant account as well as their respective community and separate portions.  We affirm the remainder of the court's decree.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR